T.C. Memo. 2017-176

UNITED STATES TAX COURT

ERNESTO P. PATACSIL AND MARILYN E. PATACSIL, Petitioners <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 28715-15.                    Filed September 11, 2017.

Ernesto P. Patacsil and Marilyn E. Patacsil, pro sese.

<u>Bryant W. H. Smith</u>, for respondent.

MEMORANDUM OPINION

CHIECHI, <u>Judge</u>:  This case is before us on respondent's motion to dismiss for lack of prosecution.  We shall grant that motion.

**[*2]**                                  Background

The record establishes[1] and/or the parties do not dispute the following.

Petitioners resided in California at the time they filed the petition.

On February 3, 2015, petitioner, Ernesto P. Patacsil (Mr. Patacsil), and petitioner, Marilyn E. Patacsil (Ms. Patacsil), each submitted to the Internal Revenue Service (IRS) Form 2848, Power of Attorney and Declaration of Representative. In Part I, Power of Attorney, of each of those respective forms, each petitioner authorized Julie Doughty (petitioners' representative or Ms. Doughty), a certified public accountant, to represent them before the IRS with respect to Federal income tax (tax) matters for their taxable years 2010, 2011, 2012, and 2013.

Ms. Doughty did not represent petitioners during the IRS' examination of petitioners' taxable years 2010 through 2012.[2] However, she was familiar with the

---

[1]The Court held an evidentiary hearing with respect to respondent's motion to dismiss for lack of prosecution in order to allow the parties to introduce evidence relevant to the resolution of that motion. After evaluating the evidence that the Court allowed into the record at that hearing, the Court has found certain facts that are set forth herein.

[2]Although petitioners authorized Ms. Doughty to represent them before the IRS with respect to tax matters for their taxable year 2013 as well as their taxable years 2010, 2011, and 2012, the only years before the Court are their taxable years 2010 through 2012 with respect to which (1) respondent mailed them a notice of

(continued...)

**[*3]** determinations that respondent's revenue agent had proposed after examining those years.

On August 18, 2015, respondent issued the 2010-2012 notice to petitioners. In that notice, respondent determined to make certain adjustments to income for petitioners' taxable years 2010, 2011, and 2012 totaling $1,041,693, $899,573, and $1,429,406, respectively. Most of those adjustments consisted of respondent's determinations (1) to increase gross receipts or sales reported by petitioners and (2) to disallow certain expenses claimed by petitioners[3] in certain Schedules C, Profit or Loss From Business (Schedule C), that they had included with the respective tax returns that they had filed for their taxable years 2010, 2011, and 2012 (2010-2012 returns). Another adjustment to income that respondent determined in the 2010-2012 notice for each of petitioners' taxable years 2010, 2011, and 2012 was to increase their gambling winnings for each of those years that petitioners had reported in their 2010-2012 returns. Respondent also determined in the 2010-2012 notice that petitioners are liable for each of their taxable

[2](...continued)
deficiency (2010-2012 notice) and (2) petitioners filed a petition, thereby commencing this case.

[3]The expenses that respondent determined to disallow in the 2010-2012 notice included those for certain "Other Expenses" and certain mortgage interest expenses.

[*4] years 2010, 2011, and 2012 for the accuracy-related penalty under section 6662(a).[4]

On November 16, 2015, petitioners filed the petition. The only determinations in the 2010-2012 notice for their taxable years 2010 through 2012 that petitioners contested in the petition were (1) respondent's disallowance of claimed Schedule C mortgage interest expenses and claimed Schedule C "Other Expenses" for "Groceries and Cleaning supplies" and (2) respondent's increase of petitioners' gambling winnings.

The consideration by respondent's Appeals Office (Appeals Office) of petitioners' taxable years 2010 through 2012 was initiated on November 16, 2015, by a request from an attorney in respondent's Chief Counsel's Office (Chief Counsel's Office) that the Appeals Office consider those years.[5] (We shall sometimes refer to this case involving petitioners' taxable years 2010 through 2012 during the period the Appeals Office was considering it as petitioners' case.)

---

[4]All section references are to the Internal Revenue Code in effect for the years at issue. All Rule references are to the Tax Court Rules of Practice and Procedure.

[5]As noted above, November 16, 2015, was the day on which petitioners filed the petition.

[*5]   Joe Session (Mr. Session), an Appeals officer, was assigned to petitioners' case on January 28, 2016.  On the same date, he sent petitioners a letter that, inter alia, notified them that he was responsible for the Appeals Office review of petitioners' case.  On February 1, 2016, he sent a copy of that letter to Ms. Doughty.

From early February through December 8, 2016, Mr. Session spent a total of approximately 26 hours considering petitioners' case.  During that period, he, inter alia, received and reviewed various documents that Ms. Doughty provided to him[6] in support of petitioners' positions with respect to the various issues in petitioners' case, had several telephone discussions with Ms. Doughty regarding those issues, concluded that he was willing to make certain concessions regarding certain of those issues, and believed on the basis of his discussions with Ms. Doughty that petitioners would probably be willing to make certain concessions and that consequently petitioners' case would probably be settled.

Mr. Session maintained a so-called case activity record in which he made notes of any important activity that occurred, the date of any such activity, and the time he spent on any such activity during his consideration of petitioners' case.

---

[6]Petitioners, through Ms. Doughty, did not provide certain documents to Mr. Session until November 2016.

**[*6]** Mr. Session made those notes in the case activity record contemporaneously with the occurrence of the activity about which he was making the notes.

During Mr. Session's consideration of petitioners' case, Ms. Doughty kept Ms. Patacsil[7] informed of her discussions with Mr. Session. During that consideration, Ms. Doughty also communicated to Ms. Patacsil what she and the accounting firm for which she worked (accounting firm) believed was the possible resolution of the various issues that she was discussing with Mr. Session.

On July 11, 2016, the Court served on petitioners and respondent a notice setting this case for trial (notice of trial) at the Court's trial session in San Francisco, California, commencing on December 12, 2016 (December 12, 2016 San Francisco trial session). Judge Carolyn P. Chiechi (Judge Chiechi) was assigned to conduct the Court's December 12, 2016 San Francisco trial session. On the same date on which the Court served the notice of trial on the parties in this case, the Court also served the Court's standing pretrial order on them.

---

[7]Ms. Doughty communicated only with Ms. Patacsil. Mr. Patacsil had no communications with her or Mr. Session. Nor did Mr. Patacsil open any mail that petitioners received regarding petitioners' case. Ms. Patacsil handled all matters relating to petitioners' case and kept Mr. Patacsil informed about the status of that case.

**[*7]**  The notice of trial stated in pertinent part:

> The parties are hereby notified that this case is set for trial at the [San Francisco] Trial Session beginning at <u>10:00 AM</u> on <u>Monday, December 12, 2016</u>.  The calendar for that Session will be called at that date and time, and the parties are expected to be present and to be prepared to try the case.  Your failure to appear may result in dismissal of the case and entry of decision against you.

Starting around October 17, 2016, as the beginning of the Court's December 12, 2016 San Francisco trial session drew closer, Mr. Session kept Sharyn Ortega (Ms. Ortega), the attorney with Chief Counsel's Office assigned to this case, informed on a regular basis about his consideration of petitioners' case, including the status of his discussions with Ms. Doughty.

On October 28, 2016, the Court served on petitioners and respondent a notice reminding them that this case was calendared for trial at the December 12, 2016 San Francisco trial session.  That notice stated in pertinent part:

> This case will remain on the Court's trial calendar unless both parties sign an agreed decision and submit it to the Court, or unless the Court otherwise notifies the parties that it is taking this case off the trial calendar.  If the case remains on the Court's trial calendar and you fail to appear at the Trial Session, the case may be dismissed.

On November 15, 2016, approximately a month before the beginning of the Court's December 12, 2016 San Francisco trial session, Ms. Patacsil telephoned Mr. Session (November 15, 2016 telephone call) and told him that she was ill and

**[*8]** would not be able to appear at that trial session. During that telephone call, Mr. Session told Ms. Patacsil (1) that he had recently received certain additional documents from Ms. Doughty, (2) that he would review those documents, and (3) that he would contact Ms. Doughty to discuss how to proceed with petitioners' case and whether it could be resolved without the need for a trial. Mr. Session reminded Ms. Patacsil that he had been discussing petitioners' case with Ms. Doughty, petitioners' representative, and that in the future Ms. Patacsil should contact Ms. Doughty for any additional assistance. In the notes that Mr. Session made in the case activity record about the November 15, 2016 telephone call that he had with Ms. Patacsil, he indicated, inter alia: "Note: A concern exist[s] because the TP [Ms. Patacsil] stated her illness involves some sort of voodoo that will prevent her from appearing at the calendar [call at the Court's December 12, 2016 San Francisco trial session]."

On November 17, 2016, Mr. Session telephoned Ms. Doughty (November 17, 2016 telephone call) and told her about the November 15, 2016 telephone call that Ms. Patacsil had made to him. During the November 17, 2016 telephone call, Mr. Session also informed Ms. Doughty that he would start his review of the additional documents that she had just provided to him, which he believed would take approximately one week to complete.

**[*9]** On November 25, 2016, respondent filed respondent's pretrial memorandum as required by the Court's standing pretrial order served on the parties on July 11, 2016. In respondent's pretrial memorandum, respondent stated in pertinent part: "The case was sent by Appeals back to Exam for review."

Petitioners did not file a pretrial memorandum as required by the Court's standing pretrial order.

On November 30, 2016, which was less than 30 days before the beginning of the Court's December 12, 2016 San Francisco trial session,[8] Ms. Patacsil filed a motion for continuance (Ms. Patacsil's motion). In that motion, she stated in pertinent part:

> We request a continuance of our tax court case. The appeal[s] officer has not been able to complete his review of the documents which we submitted. We have contacted him and he continues his thorough examination, which we appreciate.
>
> In addition, I have been quite ill and off work. Please see the attached Work Status report.

---

[8]Rule 133 provides in pertinent part:

Continuances will be granted only in exceptional circumstances. * * * A motion for continuance, filed 30 days or less prior to the date to which it is directed [here, December 12, 2016], may be set for hearing on that date, but ordinarily will be deemed dilatory and will be denied unless the ground therefor arose during that period or there was good reason for not making the motion sooner.

[*10] *       *       *       *       *       *       *

Please grant this continuance so the review can be completed and I will be in better health.

The so-called work status report that Ms. Patacsil attached to Ms. Patacsil's motion (Ms. Patacsil's work status report) was a one-page document with the name "KAISER PERMANENTE" at the top of the page and the name "Truong, Thuhong Thi (M.D.)" immediately below the name "KAISER PERMANENTE". That report showed "Patacsil, Marilyn E." as the "Patient Name" and "11/21/2016, 1:50 PM" as the "Encounter Date & Time". Ms. Patacsil's work status report stated in pertinent part: "This patient is placed off work from 11/21/2016 through 12/5/2016. * * * The patient was evaluated and deemed able to return to work at full capacity on 12/6/2016".

After reviewing Ms. Patacsil's motion and re-reviewing respondent's pretrial memorandum, Judge Chiechi was uncertain about the status of the Appeals Office's consideration of petitioners' case. That was because respondent's pretrial memorandum filed on November 25, 2016, stated that "[t]he case was sent by Appeals back to Exam for review" whereas Ms. Patacsil's motion filed on November 30, 2016, stated that "[t]he appeal[s] officer has not been able to complete his review of the documents which we submitted."

**[\*11]** In order to clarify the status of the Appeals Office's consideration of petitioners' case, on December 1, 2016, Judge Chiechi initiated a very brief telephone conference with the parties (December 1, 2016 telephone conference). During that telephone conference, Judge Chiechi asked Ms. Ortega why respondent's pretrial memorandum filed on November 25, 2016, stated that "[t]he case was sent by Appeals back to Exam for review" whereas Ms. Patacsil's motion filed on November 30, 2016, stated that "[t]he appeal[s] officer has not been able to complete his review of the documents which we submitted." In response, Ms. Ortega informed Judge Chiechi that the statement that she had just read from respondent's pretrial memorandum was incorrect and that petitioners' statement in Ms. Patacsil's motion regarding that status was correct. Ms. Ortega further advised Judge Chiechi during the December 1, 2016 telephone conference that the Appeals officer had told her shortly after she filed respondent's pretrial memorandum on November 25, 2016, that he would complete his review around December 2, 2016, of the additional documents that petitioners' representative had very recently provided to him. At the conclusion of the December 1, 2016 telephone conference, Judge Chiechi scheduled another conference call with the parties for 4 p.m. EST (1 p.m. PST) on December 8, 2016, in order to receive another status report with respect to the Appeals Office's consideration of petitioners' case.

[*12] On December 6, 2016, Mr. Session had a telephone conference with Ms. Doughty (December 6, 2016 telephone conference). During that telephone conference, they agreed to a resolution of all but one of the issues in petitioners' case. With respect to that one remaining unresolved issue, Ms. Doughty made a proposal to settle that issue (Ms. Doughty's settlement proposal). During the December 6, 2016 telephone conference, Mr. Session informed Ms. Doughty that he would prepare a schedule of adjustments showing any changes that he agreed to make to the various determinations in the 2010-2012 notice, that he would send that schedule of adjustments to Ms. Ortega, and that Ms. Ortega would thereafter prepare a stipulation of settled issues from that schedule and send it to petitioners for their signature.

After his December 6, 2016 telephone conference with Ms. Doughty, Mr. Session contacted Ms. Ortega and told her that most of the issues in petitioners' case were resolved and that he would prepare and send her shortly a schedule of adjustments reflecting that resolution. Thereafter, on December 6, 2016, Mr. Session reviewed Ms. Doughty's settlement proposal on the one remaining unresolved issue in petitioners' case, did some research on that issue, and con-cluded that he would accept that proposal. Consequently, he revised the schedule of adjustments to reflect the resolution of that remaining issue (revised schedule of

[*13] adjustments), left a voice mail message for Ms. Doughty that he had accepted Ms. Doughty's settlement proposal, and sent to her and Ms. Ortega the revised schedule of adjustments. (We shall sometimes refer to the proposed settlement of petitioners' case to which Mr. Session and Ms. Doughty agreed but which was subject to the approval of petitioners, as reflected in the revised schedule of adjustments, as the proposed settlement.)

On December 7, 2016, Ms. Doughty telephoned Mr. Session and discussed with him his decision to accept Ms. Doughty's settlement proposal. Mr. Session asked Ms. Doughty whether petitioners would agree to the proposed settlement as reflected in the revised schedule of adjustments. She responded that she and her accounting firm had already instructed petitioners to accept the proposed settlement and that she intended to contact Ms. Ortega to indicate her agreement with the revised schedule of adjustments and to request computations of the respective deficiencies and the respective accuracy-related penalties under section 6662(a) for petitioners' taxable years 2010, 2011, and 2012 for which petitioners would be liable under the proposed settlement.

Early on December 8, 2016, Mr. Session and Ms. Ortega discussed the proposed settlement and the documentation needed to implement it. Ms. Ortega told Mr. Session during those discussions that she would prepare a stipulation of

[*14] settled issues (proposed stipulation of settled issues) to reflect the proposed settlement. Ms. Ortega also informed Mr. Session that she would prepare for the telephone conference between Judge Chiechi and the parties regarding the consideration of petitioners' case by the Appeals Office that Judge Chiechi had scheduled for 4 p.m. EST (1 p.m. PST) on December 8, 2016.

After Ms. Ortega had discussed the proposed settlement with Mr. Session on December 8, 2016, she prepared and sent to Ms. Doughty a proposed stipulation of settled issues that Ms. Ortega had prepared on the basis of the revised schedule of adjustments that Mr. Session had sent her. Ms. Ortega asked Ms. Doughty to confirm that the proposed stipulation of settled issues was in accordance with the proposed settlement to which she and Mr. Session had agreed subject to the approval of petitioners. Ms. Doughty contacted Ms. Ortega on December 8, 2016, and confirmed that the proposed stipulation of settled issues was in accordance with the proposed settlement. Ms. Doughty told Ms. Ortega on December 8, 2016, that petitioners wanted to know how much the proposed settlement would cost them. Consequently, on December 8, 2016, Ms. Ortega contacted a tax computation specialist and requested that that specialist prepare expeditiously computations of the respective deficiencies and the respective accuracy-related penalties under section 6662(a) for petitioners' taxable years

**[\*15]** 2010, 2011, and 2012 for which petitioners would be liable under the proposed settlement (tax computations).

On December 8, 2016, before the telephone conference between the parties and Judge Chiechi scheduled for 4 p.m. EST (1 p.m. PST) on that day, Ms. Doughty had a telephone discussion of the proposed settlement with Ms. Patacsil. During that discussion, Ms. Patacsil told Ms. Doughty that she was not happy with the proposed settlement and that petitioners would not accept it. That was because Ms. Patacsil believed that the proposed settlement was unfair. Ms. Patacsil also told Ms. Doughty during their discussion of the proposed settlement that she believed that petitioners should have raised other issues in the petition in addition to the issues that they had raised, that the documentation that was provided to Mr. Session supported their positions on the various issues to which that documentation pertained, and that she did not believe that petitioners are liable for the respective deficiencies and the respective accuracy-related penalties under section 6662(a) for petitioners' taxable years 2010, 2011, and 2012 for which petitioners would be liable under the proposed settlement. Ms. Doughty told Ms. Patacsil during their discussion of the proposed settlement on December 8, 2016, that petitioners were not required to accept the proposed settlement; that is to say, Ms. Doughty made it clear to Ms. Patacsil that petitioners had a choice about whether

**[*16]** to accept it. However, Ms. Doughty reminded Ms. Patacsil that Ms. Doughty and her accounting firm recommended that petitioners accept the proposed settlement.

On December 8, 2016, before the telephone conference between the parties and Judge Chiechi scheduled for 4 p.m. EST (1 p.m. PST) on that day, Ms. Ortega had a telephone discussion with Ms. Patacsil. During that call, Ms. Ortega asked Ms. Patacsil whether she agreed with the proposed settlement that Mr. Session and Ms. Doughty had reached. Ms. Patacsil responded that petitioners did not agree with the proposed settlement.

On December 8, 2016, Judge Chiechi had a very brief telephone conference with the parties (December 8, 2016 telephone conference). During that telephone conference, Ms. Ortega told Judge Chiechi that the Appeals officer (i.e., Mr. Session) had completed his consideration of petitioners' case and that petitioners' representative (i.e., Ms. Doughty) and he had reached a proposed settlement of that case, which was subject to acceptance by petitioners, and that that representative had recommended to petitioners that they accept that proposed settlement. Ms. Patacsil then advised Judge Chiechi that petitioners would not accept the proposed settlement. Judge Chiechi told petitioners that, because Ms. Patacsil had indicated that petitioners would not accept the proposed settlement, they would be

**[*17]** required to appear for trial at 10 a.m. on December 12, 2016, at the December 12, 2016 San Francisco trial session. Ms. Patacsil then stated that Judge Chiechi was biased. Before the conclusion of the December 8, 2016 telephone conference, Judge Chiechi also informed the parties that she intended to deny Ms. Patacsil's motion.

On the morning of December 9, 2016, the tax computation specialist sent the requested tax computations to Ms. Ortega, who then prepared proposed decision documents reflecting those computations. Around 10:45 a.m. PST on December 9, 2016, Ms. Ortega sent by facsimile (fax) to Ms. Doughty and, at the request of Ms. Doughty, to petitioners[9] the tax computations and the document showing the proposed decision reflecting the proposed settlement (proposed decision). Ms. Ortega transmitted the tax computations and the proposed decision with a memorandum (Ms. Ortega's December 9, 2016 transmittal memorandum) which she addressed to petitioners and on which she copied Ms. Doughty. Ms. Ortega's December 9, 2016 transmittal memorandum stated in pertinent part:

---

[9]Although it was at about 10:45 a.m. PST on December 9, 2016, that Ms. Ortega sent by fax the tax computations and the proposed decision to petitioners, there was a transmission failure. Those documents were not received by fax by petitioners until shortly after 12 p.m. PST on that date.

[*18] I've attached the revised deficiencies and penalties amounts based upon the discussions the Appeals Officer [Mr. Session] had with your representatives [Ms. Doughty].

I have also included a copy of the Decision that you will need to sign to settle your case without trial. If you do not wish to appear on Monday, [December 12, 2016], I will need a copy with original signatures (a faxed copy is not sufficient), signed by both of you, by the end of business today [December 9, 2016].

In addition to sending to petitioners by fax on December 9, 2016, the tax computations and the proposed decision, Ms. Ortega telephoned Ms. Patacsil on that day (December 9, 2016 telephone call). During that telephone call, Ms. Ortega informed her that petitioners had the following options with respect to their case that was calendared for trial at the December 12, 2016 San Francisco trial session. One option that Ms. Ortega discussed with Ms. Patacsil during the December 9, 2016 telephone call was that if petitioners had changed their minds about not agreeing with the proposed settlement and had concluded that they agreed with the proposed decision reflecting that proposed settlement that Ms. Ortega had sent by fax to them, they could sign it. If petitioners agreed with and signed the proposed decision, there would be no need for a trial in their case and therefore they would not be required to appear at 10 a.m. on December 12, 2016, at the December 12, 2016 San Francisco trial session. Another option that Ms. Ortega discussed with Ms. Patacsil during the December 9, 2016 telephone call

**[*19]** was that if petitioners did not agree with the proposed decision, they did not have to sign it. Ms. Ortega told Ms. Patacsil that if petitioners did not agree with and did not sign the proposed decision, a trial would be needed in their case and therefore they would be required to appear at 10 a.m. on December 12, 2016, at the December 12, 2016 San Francisco trial session. Ms. Ortega cautioned Ms. Patacsil during the December 9, 2016 telephone call that if petitioners did not agree with and did not sign the proposed decision and did not appear at 10 a.m. on December 12, 2016, at the December 12, 2016 San Francisco trial session, Ms. Ortega would move to dismiss this case for lack of prosecution.

On December 9, 2016, while at their home, each petitioner signed the proposed decision, but each of them qualified her/his signature by writing the words "under the duress" immediately thereunder. Petitioners wrote those words immediately under their respective signatures because, even though they were informed about the terms of the proposed settlement on December 8, 2016, and refused to accept it, they did not believe that they had enough time to review the proposed decision reflecting that proposed stipulation and felt pressured to sign it on December 9, 2016, and deliver it to Ms. Ortega's office before that office closed at 5 p.m. PST on that day. Because petitioners believed that they did not have enough time to review the proposed decision and felt pressured to sign it on

[*20] December 9, 2016, and deliver it to Ms. Ortega's office before that office closed at 5 p.m. PST on that day, they were unwilling to agree with the proposed decision by signing it without qualification. Consequently, petitioners qualified their respective signatures on the proposed decision, which indicated that they did not agree with that proposed decision. (We shall refer to the proposed decision that petitioners signed with the qualifying words "under the duress" appearing under their respective signatures as the unagreed proposed decision.) Thereafter on December 9, 2016, at some time before 5 p.m. PST, Ms. Patacsil, accompanied by Maryann Patacsil, petitioners' daughter, drove to the office of the IRS in Sacramento, California (Sacramento), in order to give Ms. Ortega the unagreed proposed decision.

Ms. Patacsil telephoned Ms. Ortega when she arrived at Ms. Ortega's office, and, as a courtesy to Ms. Patacsil, Ms. Ortega told Ms. Patacsil that she would meet her in the lobby of the office building (building lobby or lobby). After Ms. Patacsil and petitioners' daughter entered the lobby, Ms. Patacsil asked petitioners' daughter to make a video/audio recording on petitioners' daughter's mobile telephone of the meeting that she was to have with Ms. Ortega.

Ms. Patacsil seemed very angry to Ms. Ortega during the several conversations that she had had with her about this case. Consequently, Ms. Ortega asked

[*21] another attorney who also worked in Chief Counsel's Office in Sacramento, Paul Isherwood (Mr. Isherwood), to accompany her to the building lobby where she was to meet Ms. Patacsil. Ms. Ortega and Mr. Isherwood took the elevator to the lobby. After Ms. Ortega and Mr. Isherwood arrived in the lobby, Mr. Isherwood remained near the elevator, and Ms. Ortega approached Ms. Patacsil and spoke with her.

When Ms. Ortega first met with Ms. Patacsil in the lobby, Ms. Patacsil gave her the unagreed proposed decision. Ms. Ortega signed the unagreed proposed decision in Ms. Patacsil's presence while they were meeting in the building lobby. (We shall refer to the unagreed proposed decision that Ms. Ortega signed as the unagreed proposed decision signed by Ms. Ortega.) Ms. Ortega then went to her office to make copies of the unagreed proposed decision signed by Ms. Ortega and returned to the building lobby to give Ms. Patacsil a copy of that document.

When Ms. Ortega returned to the lobby and met a second time with Ms. Patacsil in order to give her a copy of the unagreed proposed decision signed by Ms. Ortega, Ms. Ortega informed Ms. Patacsil that Judge Chiechi would probably not accept that document because petitioners had qualified their respective signatures that appeared thereon. Ms. Patacsil did not appear to Ms. Ortega to be concerned that Judge Chiechi would probably not accept the unagreed proposed

[*22] decision signed by Ms. Ortega. Ms. Ortega then asked Ms. Patacsil whether she would appear on December 12, 2016, at the December 12, 2016 San Francisco trial session. Ms. Patacsil responded that she would not and gave no reason to Ms. Ortega as to why she would not appear other than to tell her that petitioners had signed the unagreed proposed decision, even though she knew that they had qualified their respective signatures because they did not agree with the proposed decision by writing the words "under the duress" immediately thereunder.

While Ms. Ortega was meeting initially with Ms. Patacsil in the building lobby, petitioners' daughter made a video/audio recording of that initial meeting on her mobile telephone (first video/audio recording). Ms. Ortega was unaware that petitioners' daughter was making the first video/audio recording. When Ms. Ortega returned to the lobby and met a second time with Ms. Patacsil in order to give her a copy of the unagreed proposed decision signed by Ms. Ortega, petitioners' daughter made another video/audio recording of that second meeting on her mobile telephone (second video/audio recording). Ms. Ortega was unaware that petitioners' daughter was making the second video/audio recording.

The first video/audio recording showed and recorded the conversation at the initial meeting between Ms. Patacsil and Ms. Ortega in the lobby when Ms.

[*23] Patacsil gave Ms. Ortega the unagreed proposed decision. In that recording, the following exchange took place:

MS. ORTEGA: Hello

MS. PATACSIL: Anyway, this -- this is the only one that you need right?

MS. ORTEGA: We just need one copy, yeah. Um. Would you like me to make you a photocopy of it?

MS. PATACSIL: Um. I think, I did, uh, I took a copy.

MS. ORTEGA: Okay, aft-, on all, once I sign it, I will also um --

MS. PATACSIL: So do you want to sign it and [unintelligible]

MS. ORTEGA: Yeah, so I'm going to sign it and then do you want me to do a photocopy of my signed copy or do you want me to just fax it to you.

MS. PATACSIL: You know, I can, I can actually take it to him --

MS. ORTEGA: Okay.

MS. PATACSIL: -- if you want, yeah, yes.

MS. ORTEGA: Okay. Let me run up and make a photocopy for you and I'll bring you something right down.

MS. PATACSIL: Okay.

The second video/audio recording showed and recorded the conversation between Ms. Ortega and Ms. Patacsil after Ms. Ortega returned to the lobby with a

**[*24]** copy of the unagreed proposed decision signed by Ms. Ortega.  In that recording, the following exchange took place:

MS. ORTEGA:  Here's your copy.

MS. PATACSIL:  Okay.

MS. ORTEGA:  Um, because you guys wrote extra language --

MS. PATACSIL:  Uh huh.

MS. ORTEGA:  on there though, the judge probably isn't going to accept it.

MS. PATACSIL:  Well, he can, uh, he, he, he can, she can do whatever she wants

MS. ORTEGA:  Okay, so, um, are you, you're not going to be there. Are you going to be there on Monday?

MS. PATACSIL:  Oh, uh, no I'm not.  I'm not.

MS. ORTEGA:  Okay, okay.

MS. PATACSIL:  No, you know what though, because I signed this, you know what though, that's sufficient and what --

MS. ORTEGA:  Got you.

MS. PATACSIL:  You know and I, like I said, you know what though, we are under duress, you know what though, there is no time for review --

MS. ORTEGA:  Okay.

MS. PATACSIL:  -- or anything.

[*25] MS. ORTEGA:  Well she will see it then.

MS. PATACSIL:  And when, and actually Sharyn, you know what though, when you think about it, you know what though, the two million dollar, you know what though, income, the payment alone on that one year of 2012, you might as well look at it, because I'm sending all th[ese] boxes to the Congress and the Senate.

MS. ORTEGA:  Okay.

MS. PATACSIL:  Because we are asking them to review it themselves.  So then, you know what though, I just want to make sure that, you know what though, even though we signed this we are pursuing it.

MS. ORTEGA:  Okay.

MS. PATACSIL:  (To petitioners' daughter) Alright, thank you. Let's go.

MS. PATACSIL:  (To petitioners' daughter)  Yeah, cause you know what though, it doesn't make sense.

This case was called from the calendar (calendar call) at the December 12, 2016 San Francisco trial session.  There was no appearance by or on behalf of petitioners.  Counsel for respondent appeared and informed Judge Chiechi that petitioners had signed the proposed decision that she had sent them but had qualified their respective signatures by writing the words "under the duress" immediately thereunder.  Judge Chiechi refused to accept the unagreed proposed

[*26] decision signed by Ms. Ortega.  Respondent's counsel then made an oral motion to dismiss this case for lack of prosecution.

On December 12, 2016, Judge Chiechi issued an order in which she ordered that on or before December 21, 2016, respondent was to file a written motion to dismiss for lack of prosecution or the parties were to submit decision documents signed by the parties.  Judge Chiechi indicated at the calendar call on December 12, 2016, that any decision documents that the parties signed and intended to submit to her on or before December 21, 2016, should not contain any language that in any way qualified those documents.

On December 15, 2016, Ms. Patacsil sent Ms. Ortega a letter (December 15, 2016 letter).  In that letter, Ms. Patacsil, inter alia, expressed her frustrations concerning this case and made disparaging comments about various people and institutions, including former President Barack Obama, the IRS, IRS employees, other Federal Government agencies, other Federal Government employees, the State of California, State of California employees, and Judge Chiechi.

On December 21, 2016, respondent filed respondent's motion to dismiss for lack of prosecution (respondent's motion).

On December 26, 2016, Ms. Patacsil sent by fax a letter to the Appeals officer.  That letter stated in pertinent part:

[*27] I'm totally outrage [sic] and don't know how to express my disbelief on 12/8/16 at 12:10PM reading [the] "Stipulation of Settled Issues" faxed to my residence by IRS Atty. Ortega. On top of not being given a [sic] time to review the documents and I was demanded to deliver the signed documents before the end of [the] business day. The IRS must think I'm stupid and ignorant to expect I will be so scared for [sic] their demand. I was put "UNDER DURESS". I spoke to you once and you promised to give me a courtesy call after you review [sic] the documents. Unfortunately, I never heard from you. Did you review the 3 boxes of receipts and cancelled checks? I personally and honestly think you "NEVER DID." Because if you did, the calculations will be different. You can refer this case to whoever, but I'm confident that [the] IRS treated my case differently and I was singled out for standing up to the Federal Gov't. I'm sending you a copy of 2 examples of legitimate business expenses that [the] IRS severely reduced. If you treat all of the businesses this way I can assure you most of us will close. It appeared that I'm responsible for most of [the] expenses. ARE YOU REALLY KIDDING ME?

I received your letter dated 12/8/16, post marked 12/9/16 on 12/22/16. Unfortunately, the mailbox is broken and [I] had to picked up [sic] [the] mail from the Post Office.

As I told Atty. Ortega, receipts and cancelled [checks] are being prepared to be sent to [the] US CONGRESS on 1/20/17 and all copies of evidence will be sent to PRESIDENT ELECT DONALD J. TRUMP.

Atty. Ortega took advantage of JUDGE CHIECHE [sic] being biased and prejudice[d] against us.

By order dated March 30, 2017, Judge Chiechi calendared respondent's motion for an evidentiary hearing on May 9, 2017. In that order, Judge Chiechi ordered, inter alia, "that respondent will ensure that the ethical[] issues raised by

**[*28]** * * * [Ms.] Ortega's testifying at * * * [the evidentiary] hearing will be resolved by respondent's designating a different attorney to conduct the May 9, 2017 hearing on respondent's behalf." Respondent complied with that order and designated another attorney, Bryant W. H. Smith, to conduct the evidentiary hearing on respondent's behalf.

On May 9, 2017, this case was called for an evidentiary hearing with respect to respondent's motion (May 9, 2017 evidentiary hearing). Petitioners and respondent's counsel appeared at that hearing.

## Discussion

Before considering whether to grant respondent's motion, we summarize our evaluation of the following witnesses who were called to testify at the May 9, 2017 evidentiary hearing: Mr. Session, Ms. Doughty, Ms. Ortega, Mr. Isherwood, Ms. Patacsil, Mr. Patacsil, and Maryann Patacsil. Except for the respective testimonies of Mr. Isherwood and Ms. Patacsil, we found the respective testimonies of the witnesses who testified at that hearing to be credible.

With respect to Mr. Isherwood, we found his inability to answer many questions posed to him because of his claimed lack of memory to be, to say the least, surprising. In fact, Mr. Isherwood's claimed lack of memory was such that it raised a question in our mind about his candor. Nonetheless, we have no reason to

[*29] question the responses, which are not material to our deciding whether to grant respondent's motion, that he was able to give from memory to certain other questions.

With respect to Ms. Patacsil, before turning to specific aspects of her testimony at the May 9, 2017 evidentiary hearing, we will set forth our overall impression of her on the basis of that testimony, the testimony of Ms. Doughty, the testimony of Ms. Ortega, certain documentary evidence that was made part of the record at that hearing, and her demeanor at that hearing. Our overall impression of Ms. Patacsil is that she is inflexible in her belief that the determinations that respondent made in the 2010-2012 notice are wrong and should not be sustained.[10] We think that that inflexible belief has caused Ms. Patacsil to conclude that petitioners have been treated unfairly by various persons and various institutions who have disagreed with her, which frustrated her and which led her, inter alia, to send Ms. Ortega her December 15, 2016 letter. In that letter, Ms. Patacsil expressed her frustrations concerning this case and made disparaging comments about various people and institutions, including President Barack Obama, the IRS, IRS employees, other Federal Government agencies, other Federal Government

---

[10]We do not opine herein on whether or not the determinations that respondent made in the 2010-2012 notice should be sustained. We decide only whether to grant respondent's motion.

[*30] employees, the State of California, State of California employees, and Judge Chiechi.

With respect to specific aspects of Ms. Patacsil's testimony at the May 9, 2017 evidentiary hearing, we found her testimony to be internally inconsistent in certain material respects and inconsistent in certain other material respects with certain testimony of Ms. Doughty and certain testimony of Ms. Ortega. For example, Ms. Patacsil testified that she was not aware that Mr. Session and Ms. Doughty had reached a proposed settlement in petitioners' case. However, Ms. Doughty and Ms. Ortega each testified that each had discussed the proposed settlement with Ms. Patacsil on December 8, 2016, before the telephone conference between the parties and Judge Chiechi scheduled for 4 p.m. EST (1 p.m. PST) on that date. In addition, Ms. Patacsil told Judge Chiechi during that telephone conference that petitioners would not accept the proposed settlement. As noted above, we found the respective testimonies of, inter alia, Ms. Doughty and Ms. Ortega to be credible. We need not, and do not decide, whether Ms. Patacsil's testimony was internally inconsistent in certain material respects and inconsistent in certain other material respects with the respective testimonies of Ms. Doughty and Ms. Ortega because she had a faulty memory and/or because she was not telling the truth and/or for some other reason. We conclude only that

[*31] we are unwilling to rely on Ms. Patacsil's testimony in certain material respects.

We turn now to respondent's motion. The notice of trial informing the parties that this case was calendared for trial at the December 12, 2016 San Francisco trial session, which the Court served on the parties on July 11, 2016, stated in pertinent part:

> The parties are hereby notified that this case is set for trial at the [San Francisco] Trial Session beginning at <u>10:00 AM</u> on <u>Monday, December 12, 2016</u>. The calendar for that Session will be called at that date and time, and the parties are expected to be present and to be prepared to try the case. <u>Your failure to appear may result in dismissal of the case and entry of decision against you</u>. [Last emphasis added.]

The notice reminding the parties that this case was calendared for trial at the December 12, 2016 San Francisco trial session, which the Court served on the parties on October 28, 2016, stated in pertinent part:

> This case will remain on the Court's trial calendar unless both parties sign an agreed decision and submit it to the Court, or unless the Court otherwise notifies the parties that it is taking this case off the trial calendar. <u>If the case remains on the Court's trial calendar and you fail to appear at the Trial Session, the case may be dismissed</u>. [Emphasis added.]

During the December 8, 2016 telephone conference between the parties and Judge Chiechi, Ms. Patacsil informed her that petitioners would not accept the

**[*32]** proposed settlement to which petitioners' representative (i.e., Ms. Doughty) and the Appeals officer (i.e., Mr. Session) had agreed. Judge Chiechi told petitioners that, because Ms. Patacsil had indicated that petitioners would not accept the proposed settlement, they would be required to appear for trial at 10 a.m. on December 12, 2016, at the December 12, 2016 San Francisco trial session. Ms. Patacsil then stated that Judge Chiechi was biased. Before the conclusion of the December 8, 2016 telephone conference, Judge Chiechi also informed the parties that she intended to deny Ms. Patacsil's motion.

During the December 9, 2016 telephone call that Ms. Ortega had with Ms. Patacsil, Ms. Ortega informed her that petitioners had the following options with respect to their case that was calendared for trial at the December 12, 2016 San Francisco trial session. One option that Ms. Ortega discussed with Ms. Patacsil during the December 9, 2016 telephone call was that if petitioners had changed their minds about not agreeing with the proposed settlement and had concluded that they agreed with the proposed decision reflecting that proposed settlement that Ms. Ortega had sent by fax to them, they could sign it. If petitioners agreed with and signed the proposed decision, there would be no need for a trial in their case and therefore they would not be required to appear at 10 a.m. on December 12, 2016, at the December 12, 2016 San Francisco trial session. Another option

**[*33]** that Ms. Ortega discussed with Ms. Patacsil during the December 9, 2016 telephone call was that if petitioners did not agree with the proposed decision, they did not have to sign it. Ms. Ortega told Ms. Patacsil that if petitioners did not agree with and did not sign the proposed decision, a trial would be needed in their case and therefore they would be required to appear at 10 a.m. on December 12, 2016, at the December 12, 2016 San Francisco trial session. Ms. Ortega cautioned Ms. Patacsil during the December 9, 2016 telephone call that if petitioners did not agree with and did not sign the proposed decision and did not appear at 10 a.m. on December 12, 2016, at the December 12, 2016 San Francisco trial session, Ms. Ortega would move to dismiss this case for lack of prosecution.

We have found that when Ms. Ortega and Ms. Patacsil were meeting a second time late in the afternoon on December 9, 2016, in the lobby of Ms. Ortega's office building Ms. Ortega cautioned her that Judge Chiechi would probably not accept the unagreed proposed decision signed by Ms. Ortega. Ms. Ortega then asked Ms. Patacsil whether she would appear on December 12, 2016, at the December 12, 2016 San Francisco trial session. Ms. Patacsil responded that she would not and gave no reason to Ms. Ortega as to why she would not appear other than to tell her that petitioners had signed the unagreed proposed decision, even though she knew that they had qualified their respective signatures because

[*34] they did not agree with the proposed decision by writing the words "under the duress" immediately thereunder.[11]

---

[11]The following exchange, inter alia, took place at the second meeting on December 9, 2016, between Ms. Ortega and Ms. Patacsil:

MS. ORTEGA: Um, because you guys wrote extra language --

MS. PATACSIL: Uh huh.

MS. ORTEGA: -- on there though, the judge probably isn't going to accept it.

MS. PATACSIL: Well, he can, uh, he, he, he can, she can do whatever she wants

MS. ORTEGA: Okay, so, um, are you, you're not going to be there. Are you going to be there on Monday?

MS. PATACSIL: Oh, uh, no I'm not. I'm not.

MS. ORTEGA: Okay, okay.

MS. PATACSIL: No, you know what though, because I signed this, you know what though, that's sufficient and what --

MS. ORTEGA: Got you.

MS. PATACSIL: You know and I, like I said, you know what though, we are under duress, you know what though, there is no time for review --

MS. ORTEGA: Okay.

[*35]  We have found that Ms. Patacsil did not appear to Ms. Ortega to be concerned that Judge Chiechi would probably not accept the unagreed proposed decision signed by Ms. Ortega.  Moreover, as she indicated in her response to a question that Judge Chiechi asked her at the May 9, 2017 evidentiary hearing, Ms. Patacsil was willing to "take her chances" with the consequences of not appearing on December 12, 2016, at the December 12, 2016 San Francisco trial session if, as Ms. Ortega informed her, Judge Chiechi would probably not accept the unagreed proposed decision signed by Ms. Ortega.  The transcript of the exchange between Judge Chiechi and Ms. Patacsil at the May 9, 2017 evidentiary hearing during which Judge Chiechi asked that question states:

JUDGE CHIECHI:  What's the duress?  I still don't understand the --

MS. PATACSIL:  The duress means --

JUDGE CHIECHI:  The duress was you'd have to go to Court?

MS. PATACSIL:  No.

JUDGE CHIECHI:  What was the duress then?

MS. PATACSIL:  Because, you know what, we were put under pressure --

JUDGE CHIECHI:  You had two choices, you either sign it with no phrase ["under the duress"], and you don't go to Court, which is what I told you on December 8, or you don't -- or you don't sign it, and

[*36] then as I told you, you don't agree, which is fine, your right, and then you're required to go to Court.

MS. PATACSIL:  I was under pressure, Your Honor.

JUDGE CHIECHI:  So you had a choice.

MS. PATACSIL:  I was under pressure, Your Honor.  Because there -- they faxed the documents on a Friday afternoon, and I -- they need it by 5:00.  I mean, where you do put -- you know what, this is big thing.  You know, it's a million dollar -- you know, taxes, and it's all --

JUDGE CHIECHI:  Well, you could have come to the Court on Monday to explain all that.

MS. PATACSIL:  Well, you know what though, like I said, Your Honor --

JUDGE CHIECHI:  But you told -- according to Ms. Ortega, you told her you weren't going to go when she asked you.  You said you weren't going to go to Court.

MS. PATACSIL:  I was not going -- because, you know what though, I already signed the document, so of course, that's why --

JUDGE CHIECHI:  But you signed it with the phrase and she told [you] that the Court -- the Judge might not accept it.  Right?

MS. PATACSIL:  Yeah.

JUDGE CHIECHI:  So you were going to take your chances?

MS. PATACSIL:  Yes, I do.

**[*37]** In response to a direct question by Judge Chiechi to Ms. Patacsil at the May 9, 2017 evidentiary hearing, Ms. Patacsil gave a different reason as to why petitioners did not appear on December 12, 2016, at the December 12, 2016 San Francisco trial session from the reason than she gave to Judge Chiechi at that same evidentiary hearing (quoted above) and that she gave to Ms. Ortega when they met in the building lobby a second time on December 9, 2016 (quoted in second video/audio recording that petitioners' daughter made of that second meeting).  At the May 9, 2017 evidentiary hearing, Judge Chiechi asked Ms. Patacsil why she did not appear on December 12, 2016, at the December 12, 2016 San Francisco trial session.  Ms. Patacsil responded:

> MS. PATACSIL:  Because Ms. Ortega told me that it's hard to deal with you, that's the reason -- one of the reason why that I did -- I was so emotional that day, that -- this is the -- just that it's hard to deal with.  So it's just like a threat to me, that I don't have no choice.  A powerful -- IRS and a powerful Judge, Your Honor.  So what do you put -- you know, the taxpayers?

This case was called from the calendar on December 12, 2016, at the December 12, 2016 San Francisco trial session.  There was no appearance by or on behalf of petitioners.  Counsel for respondent appeared and informed Judge Chiechi that petitioners had signed the proposed decision that she had sent them but had qualified their respective signatures by writing the words "under the

[*38] duress" immediately thereunder. Judge Chiechi refused to accept the unagreed proposed decision signed by Ms. Ortega. Respondent's counsel then made an oral motion to dismiss this case for lack of prosecution.

On the record before us, we find that Ms. Patacsil was totally dismissive of and had total disregard for the Court's two notices served on the parties on July 11 and October 28, 2016, informing petitioners that if their case had not settled before the commencement of the December 12, 2016 San Francisco trial session, they were required to appear at that session at 10 a.m. on December 12, 2016. On that record, we further find that Ms. Patacsil was totally dismissive of and had total disregard for Judge Chiechi's informing petitioners during the December 8, 2016 telephone conference with the parties that, because Ms. Patacsil had indicated that petitioners would not accept the proposed settlement, they would be required to appear for trial at 10 a.m. on December 12, 2016, at the December 12, 2016 San Francisco trial session. On the record before us, we also find that Ms. Patacsil was totally dismissive of and had total disregard for Ms. Ortega's telling her during the December 9, 2016 telephone call with her that if petitioners did not agree with and did not sign the proposed decision, a trial would be needed in their case and therefore they would be required to appear at 10 a.m. on December 12, 2016, at the December 12, 2016 San Francisco trial session. On that record, we further find

**[\*39]** that Ms. Patacsil was totally dismissive of and had total disregard for Ms. Ortega's cautioning her during the December 9, 2016 telephone call that if petitioners did not agree with and did not sign the proposed decision and did not appear at 10 a.m. on December 12, 2016, at the December 12, 2016 San Francisco trial session, Ms. Ortega would move to dismiss this case for lack of prosecution at that December 12, 2016 San Francisco trial session. On the record before us, we also find that Ms. Patacsil was totally dismissive of and had total disregard for Ms. Ortega's cautioning her when they met a second time on December 9, 2016, that Judge Chiechi would probably not accept the unagreed proposed decision signed by Ms. Ortega, as evidenced by Ms. Patacsil's informing Ms. Ortega that she nonetheless would not appear on December 12, 2016, at the December 12, 2016 San Francisco trial session.

Based upon our examination of the entire record before us, we find that petitioners had no sufficient or justifiable reason for failing to appear for trial at 10 a.m. on December 12, 2016, at the December 12, 2016 San Francisco trial session. On that record, we shall grant respondent's motion.[12]

---

[12]Respondent's motion seeks a decision in this case that reflects the proposed settlement to which Ms. Doughty and Mr. Session had agreed during the Appeals Office's consideration of petitioners' case. We note that respondent determined in the 2010-2012 notice issued to petitioners for their taxable years

(continued...)

[*40]  To reflect the foregoing,

An order granting respondent's

motion and an appropriate decision

will be entered.

---

[12](...continued)
2010 through 2012 that, inter alia, they have unreported gross receipts/sales, Schedule E rents, gambling winnings, and cancellation of indebtedness income. Although respondent bears the initial burden of laying some evidentiary foundation connecting a taxpayer with income-producing activity, see Weimerskirch v. Commissioner, 596 F.2d 358, 361-362 (9th Cir. 1979), rev'g 67 T.C. 672 (1977), except for the unreported gambling winnings, petitioners alleged no error in the petition with respect to any of the other unreported income determinations that respondent made in the 2010-2012 notice.  Consequently, they are deemed to have conceded those other unreported income issues.  See Rule 34(b)(4).  With respect to the alleged unreported gambling winnings, the proposed settlement that petitioners did not accept included a concession by the Appeals officer with respect to those alleged winnings, and that concession is reflected in the decision that respondent seeks if we were to grant, as we have held we will, respondent's motion.  Respondent also determined in the 2010-2012 notice, inter alia, that petitioners are liable for each of petitioners' taxable years 2010, 2011, and 2012 for the accuracy-related penalty under sec. 6662(a).  Petitioners alleged no error in the petition with respect to those determinations.  Consequently, respondent has no obligation under sec. 7491(c) to produce evidence with respect to the sec. 6662(a) determinations in the 2010-2012 notice.  See Funk v. Commissioner, 123 T.C. 213, 218 (2004).